NEW YORK,
May, 1827.

Jennings
v.
Webster.

## JENNINGS *against* WEBSTER.

ON error from the court of common pleas of the county of Monroe.

The record returned from that court was as follows:

"Pleas in the court of common pleas, held at the court house in Rochester, in and for the county of Monroe, of June term, A. D. 1826.

*Monroe county*, ss : Ira Webster puts in his place *Isaac Hills*, his attorney, against Abraham Jennings, in a plea of trespass on the case. [*257]

*Monroe county*, ss : Abraham Jennings puts in his place *George Hosmer*, his attorney, at the suit of Ira Webster in the plea aforesaid.

*Monroe county*, ss : Be it remembered, that on the 5th day of August, A. D. 1825, a certain action of trespass on the case was tried before Peter Price, one of the justices of the peace in and for said county, in pursuance of the statute entitled, "an act for the better and more speedy recovery of debts, of the value of fifty dollars;" in which action one Ira Webster was plaintiff, and one Abraham Jennings was defendant; and judgment having been rendered by the said justice for the plaintiff in the said suit, the defendant thereupon appealed the said cause to the said court of common pleas in and for said county, according to, and in pursuance of the provisions of the said act, and afterwards, to wit, on the 1st Monday of October, A. D. 1825, before the judges of the same court, at the court house in Rochester aforesaid, came as well the said plaintiff, by his attorney aforesaid, as the said defendant, by his attorney aforesaid; and the said justice hath sent here his certain return in the words and figures following, to wit:

Form of a judgmet record in the common pleas, on appeal from a justice's court. Though the placita omit to state that the court was held before the judges; and be of a term subsequent to the coming in of the return, and the cause be tried at a subsequent term, and there be no continuances to that time, yet these defects are all cured by the statute of amendments and jeofails.

Where R. owed J. & W. and all three agreed that R. should sell staves to the amount of the debts, viz. $75 to J., and that J. should, on selling them, pay R.'s debt due to W.; and R. said to J., "I deliver you the staves," (they being 10 miles off,) and J. took and sold them; *held*, that the contract was valid, not being within the statute of frauds, either as to the promise or sale; that the delivery was sufficient; and that W. might recover his debt in an action against J.

*Held*, also, that any agreement in different terms, made by R. & J. before the agreement between the three, and when W. was not present, could not affect W.; nor could any declarations on the subject made by R. & J.

NEW YORK,
May, 1827.

Jennings
v.
Webster.

[*258]

State of New York,
Monroe county.

Ira Webster
v.
Abraham Jennings.     To the

honorable court of common pleas of the said county of Monroe, I, Peter Price, one of the justices of the peace for the said county, do certify, that the demand of the said plaintiff in the said cause was set forth verbally, in which the plaintiff stated, that sometime in the month of May or June last past, the defendant purchased a quantity of staves of one Samuel W. Rowley, at the price of $75 00; and that the said Samuel W. Rowley, was indebted to the plaintiff in the sum of twenty-five dollars; and that the defendant did agree with the said Samuel W. Rowley, and the said plaintiff, in consequence of said purchase, to pay the debt due the plaintiff, which he refused, &c. To the said *claim and demand, the defendant pleaded the general issue: and the said cause came on to be tried on the 5th day of August, A. D. 1825, at my office in Rush, in the said county. And I do further certify, that, after hearing the proofs and allegations of the parties, I, the said justice aforesaid, did enter and record judgment in favor of the plaintiff against the defendant, for 22 dollars, the damages; and 1 dollar and 68 cents, the costs of suit. Witness my hand, this 23d day of June, A. D. 1825,

PETER PRICE,
Justice of the Peace for Monroe county.

Therefore, to try the issue above joined, let a jury thereupon come, before the judges of the same court now here, by whom, &c., and who neither, &c., to recognize, &c., because as well, &c. Whereupon the jurors of the jury whereof mention is above made, being summoned, also come, who, to speak the truth of the matters above contained, being chosen, tried and sworn, say upon their oaths, that the said defendant did undertake and promise, in manner and form as the said plaintiff hath above, in declaring against him, complained; and they assess the damages of the said plaintiff on occasion of the premises, besides his costs and charges, by him about his suit in this behalf ex-

pended, to twenty-two dollars; and for those costs and charges, to six cents.

Judgment signed this 15th day of September, 1826.

M. CHAPIN.

Therefore it is considered by the judges of the same court, now here, that the said plaintiff do recover against the said defendant, his said damages, costs and charges, by the jurors aforesaid assessed; and also 32 dollars and 8 cents, for his said costs and charges, by the said court, now here, adjudged of increase to the said plaintiff, with his assent; and that he have execution thereof according to, and in pursuance of the provisions of the said act.

*On the trial, a bill of exceptions was taken, and was returned with the record, presenting certain questions of law upon the merits. The facts upon which these questions depended, will be found sufficiently stated in the opinion of the court, with the questions themselves. The bill mentioned the trial as in June term, 1826.

[*259]

*G. Hosmer*, for the plaintiff in error, took these exceptions, to the record: 1. That the *placita* did not mention before whom the court was holden; 2. It was of June term, 1826, when the memorandum shows it should have been of October term, 1825; 3. The bill of exceptions mentions the trial as in June term; and there are no continuances to that day.

To support these objections, he cited 2 R. L. 148.

As to the questions on the merits, and principally to show that the case was within the statute of frauds, he cited 1 R. L. 79, s. 15; 3 John. 399; 13 Id. 434; 11 id. 283, 4; 1 East, 192, 195; 1 Taunt. 457; 2 Esp. Rep. 598; Rob. on Frauds, 171; 2 John. 421; 15 id. 349; 2 M. & S. 397; 5 Taunt. 621; 3 Caines, 182; 12 Mass. Rep. 419, 425; 1 Dane's Abr. 204, ch. 9, art. 18, s. 17; id. 153, ch. 5 art. 1, s. 5; 1 Esp. Dig. 65; 1 Bac. Abr. 32; Pow. on Contr. 556; 1 Dane's Abr. 123, ch. 1, art. 40, s. 3; 18 John. 12;

NEW YORK, 4 Cowen, 438, 9; 1 Caines, 183; Bull. N. P. 153; 1 Esp.
May, 1827. Dig. 88; 1 Dane's Abr. 110.

Jennings
v.
Webster.

*I. Hills & D. D. Barnard*, contra. As to the objection of form, they cited 2 R. L. 148; 2 Dunl. Pr. 1149; Laws, sess. 47, ch. 238, s. 40; 1 R. L. 117; Cro. Eliz. 489; Cro. Jac. 528; 2 T. R. 255; 6 T. R. 618; 4 John. 499.

As to the merits, they cited 3 Caines, 182.

*Curia*, per WOODWORTH. J. This is a writ of error to the Monroe common pleas. The cause was removed into that court by appeal from the judgment of a justice. The plaintiff in the court below, declared in substance, that one S. W. Rowley, being indebted to him in the sum of $25, Rowley sold to the defendant a quantity of staves, at the price of $75, and the defendant agreed with Rowley and [*260] *the plaintiff, in consequence of such purchase, to pay the plaintiff's debt. Plea, the general issue.

On the trial in the common pleas, the plaintiff proved that in a conversation between him and the defendant, it was proposed that one of them should purchase the staves, for the security of their mutual demands against Rowley. The defendant stated, that according to his information, there would be sufficient to secure their debts; but no bargain was then made. S. Smith, a witness, was then called, who testified, that afterwards, Rowley, Webster, and Jennings being together, he, together with Norman Goodrich, was called as a witness to a bargain, when Rowley declared as follows: " I deliver to Mr. Jennings a certain lot of staves, now being in Pittsford, (a distance of ten miles from the place of contracting,) at the stipulated price of $75, with the consideration that Jennings pay the demand which Webster has against me, when he shall have sold the staves and got the returns." The witness further stated, that he never saw those persons together on any other occasion.

The defendant, in order to show that the contract was different in its terms, offered to prove by N. Goodrich, that he was present with Rowley and Jennings immediately

before the contract was concluded; and that the terms of their agreement were, that Jennings should first apply the proceeds of the sale of the staves to the payment of charges and expenses to be incurred in culling and hauling; secondly; to the payment of a debt due to Jennings from Rowley; thirdly, to the payment of Webster's demand; and that Jennings and Rowley did not separate after such arrangement made, before they were joined by Webster, and Smith, the witness, when the contract was declared as stated by Smith. This evidence was rejected, and the defendant excepted.

I think the court decided correctly in rejecting the evidence. If admitted, it might have had an influence with the jury, though altogether irrelevant. Webster could not, and ought not to be affected by any previous arrangement, made between Jennings and Rowley, to which he was not *a party. He relies on the subsequent contract proved by Smith. Smith's testimony stands unimpeached. He cannot be assailed by showing that two of the parties previously intended to contract differently. As the proofs stand, they undoubtedly changed their opinions. The cause of their so doing is immaterial to the plaintiff. The defendant then called A. Joyce as a witness, who said he was present at the place spoken of by Smith; that Rowley, Webster and Jennings were present; also, Norman Goodrich and another person; but he could not say that Smith was that person. He thought it was in the forenoon, but was not certain. This witness stated that the contract then declared, varied from that proved by Smith, and was substantially the same as that offered to be proved by M. Goodrich.

[*261]

The plaintiff then called Smith, who testified that the time spoken of by him was in the afternoon; that he did not see the last mentioned witness there at that time; and that he could not have been present without his knowing it. The defendant then offered to prove by Goodrich the same facts as were before offered and rejected by the court, with this addition; that after the contract had been concluded. between Jennings and Rowley, Goodrich was re-

NEW YORK,
May, 1827.

Jennings
v.
Webster.

quested by them to go with them to Webster, who was near, to be a witness to the contract then to be declared. The witness not being able to attend, he proposed that they should call his brother, Norman Goodrich. After the contract had been declared, Jennings and Rowley, before they separated, informed him that the contract, as concluded between them in the presence of the witness, had been so declared before Webster. The evidence was rejected, and the defendant excepted.

This evidence is liable to the same objection as that which had been overruled. What Joyce testified was not objected to. So far as that went to satisfy the jury, that he was present at the time spoken of by Smith, and described the contract differently, the defendant had the benefit of it: as to this, it seems highly probable that the time spoken of by Joyce, was not the same spoken of by Smith.

[*262]

*The one thinks it was in the forenoon; the other in the afternoon. Joyce did not know whether Smith was present; but Smith is positive that Joyce was not present at the time he refers to. The question on this evidence is, was the contract, as proved by Smith, disproved by Joyce? What some of the parties declared previously, or what some of them declared afterwards, cannot be admitted to disprove that on which the plaintiff rested. If it be admitted that what took place when the plaintiff was present, must govern, upon what principle can his right be affected by showing that, at another time, two of the contracting parties had different views, and contemplated that a different contract should be entered into, or that they declared afterwards that the contract was different? The defendant then offered to prove that, after the time mentioned by Smith, Jennings and Rowley made a new contract for the staves, and Jennings took a delivery under the same. This was rejected and an exception taken. The evidence was manifestly irrelevant. If Webster had proved a contract with him, Jennings and Rowley could not change it without his assent.

An exception was taken to the charge, which was, that, Rowley saying "I deliver," was a good delivery, if the ven-

dee afterwards took possession of the thing delivered, and <span style="float:right">NEW YORK,<br>May, 1827.</span> disposed of it. The charge was correct in point of law.

<span style="float:right">Jennings<br>v.<br>Webster.</span>

A written order given by the seller of goods to the buyer, directing the person in whose care the goods are, to deliver them, is a sufficient delivery within the statute of *frauds*. (2 Esp. Rep. 598.) This case is substantially the same: the only difference is, that here the seller delivers at once; the meaning of which is, there are the staves; you have my permission; go and take them; instead of giving an order to A. B., directing him to deliver. It is to be inferred that the staves were not in the possession of any individual; and therefore an order was unnecessary. The direction gave a right to the vendee immediately to take them.

In the case of *Vincent* v. *Germond*, (11 John. 283,) the defendant purchased some cattle in the plaintiff's field. *Nothing was paid; but the cattle were to be at the vendee's risk. Afterwards, the defendant, without saying any thing to the plaintiff, took them away. This was held a good delivery. The court observed, "It may be questioned whether what took place between the parties, if standing alone, would amount to a delivery; but the subsequent conduct of the defendant, in taking away the oxen without any new contract, affords sufficient ground to infer a delivery."

<span style="float:right">[*263]</span>

The charge of the judge was within this rule. The delivery was sufficient if the vendee took possession, and disposal of the property.[1]

---

[1] Plaintiff bargained about the sale of some lumber to defendant, then already measured and inspected, piled apart and in view of both parties; having agreed on the price, at over fifty dollars, plaintiff said to defendant, "the lumber is yours." Defendant then told plaintiff to take the inspector's bill to a third party, who would pay him the amount; this was done; but, payment was refused. Held, in a suit brought to recover the price, that there was no delivery and acceptance within the statute of frauds, and the sale was therefore void. *Shindler* v. *Houston*, 1 Com. 261.

To constitute delivery and acceptance within the statute, more than words is necessary—there must be some act of the parties amounting to transfer of possession and acceptance. Ib.

Our courts have recognized the case of *Towers* v. *Osborn*, Str. 506, as sound

The objections to the caption of the record, and the want of continuances, if well taken, are cured by the statute of amendments and jeofails. I am of opinion that the judgment be affirmed.

Judgment affirmed.

law. In that case the defendant bespoke a carriage; and, after it was made for him, refused to take it; and, that it was not a case within the statute. And so it was held, in respect to an agreement for the delivery of wheat, which was not threshed. *Crookshank* v. *Burrell*, 18 J. R. 58.

The delivery of the receipt of the store-keeper, for the goods, was held to amount to a constructive delivery of the goods. Thus, where the vendee took a bill of parcels, and also an order for the goods from the vendor; and marked the initials of his name on the goods, it was considered as amounting to a delivery of the goods. *Wilkes* v. *Ferris*, 5 J. R. 335. *Hollingworth* v *Napier*, 3 Cai. R. 182.

In the case last cited, the court observed, that the order itself was a delivery, so as to prevent the operation of the statute. *Hollingworth* v. *Napier* 3 Cai. R. 182.

It was also held that payment of the purchase money amounted to a delivery of the goods, although they were left in the hands of the seller. *Lansing* v. *Turner*, 2 J. R. 16.

An agreement with the vendor as to the amount to be paid for the storage of the goods sold, and a delivery by him of the import entry to the agent of the vendee, so that the purchaser might be enabled to make an export entry, was held not to amount to such a delivery under the statute as to charge the vendee with the loss. *Bailey* v. *Ogden*, 3 J. R. 399.

Where a purchase is made at an auction sale, at one time and from the same vendor, although the articles purchased are numerous and struck off separately at separate and distinct prices, the whole constitutes but one entire contract, and a delivery of part of the goods sold renders the sale valid for the whole, within the statute of frauds. *Mills* v. *Hunt*, 17 Wen. 333; S. C, 20 Wen. 431.

An auctioneer who sells goods as the mere agent of others, and does not, at the time of the sale, disclose the names of his principals, renders himself personally liable as the vendor of the goods; and in such case, although the goods sold belong to distinct owners, a delivery to the purchaser by one owner of his share of the goods, is sufficient to render the sale valid as to the goods of the other owner which are not delivered. Ib. S. C., 20 Wen. 431.

A contract to deliver, at a future day, a thing not then existing, but to be made, is not within the statute; for it is a contract for work and labor, not for the sale and purchase of goods. *Crookshank* v. *Burrell*, 18 J. R. 58.

As, where the plaintiff contracted to make a wagon for the defendant by a a certain day, when he was to come and pay for it in lambs at a certain price per head: held, that this was a contract for work and labor, not for the sale of goods. Ib. N. Y. Dig. Vol. 2, p. 1246, *et seq*, tit. *Frauds*.