Dehority v. Paxson et al.

No. 11,401.

## DEHORITY v. PAXSON ET AL.

97   253
158   203

INSTRUCTIONS.— Evidence.— Harmless Error.— An erroneous instruction, which, in view of the evidence, could not injure, is not available error.

SALE.—Statute of Frauds.—Delivery.—A delivery of goods, so as to take a sale thereof out of the statute of frauds, can not be accomplished by mere words, without some act of the purchaser amounting to a receipt thereof.

CHATTEL MORTGAGE.—Replevin.—Evidence.—A chattel mortgage of "all the furniture, lumber and materials" in a certain furniture factory described, and all furniture afterwards made in said factory, will cover furniture afterwards manufactured there out of said materials and lumber; and in replevin by the mortgagee for such furniture afterwards manufactured, it is error to exclude evidence that the furniture described in the complaint was made in that factory of said materials.

From the Madison Circuit Court.

M. A. Chipman and J. W. Sansberry, Jr., for appellant.
C. L. Henry and H. C. Ryan, for appellees.

BLACK, C.—The appellant brought his action against the appellees, Joseph R. Paxson and Thomas C. Paxson, to recover possession of certain personal property and damages for the detention thereof. There was an answer of general denial, and a trial by jury resulted in a verdict for the defendants. A motion for a new trial, made by the plaintiff, was overruled, and judgment was rendered upon the verdict. The overruling of the motion for a new trial has been assigned as error.

The property in controversy consisted of a lot of furniture and lumber and other materials of a furniture manufactory,

amounting in value, as shown by the verdict, to seven hundred and fifty dollars. It appeared from the evidence that this property had been owned by the defendant Joseph, and that a short time before the commencement of this action he had sold and delivered it to his co-defendant. The plaintiff based his alleged right to recover upon two distinct grounds, the former of these in the order of the evidence being what was set up as a sale to him by said Joseph prior to his said sale to his co-defendant, and the other being a chattel mortgage of yet earlier date executed to the plaintiff by said Joseph.

The evidence showed that, on the 16th of July, 1883, a schedule of furniture and materials in the furniture manufactory of said Joseph at the city of Anderson was made, the prices or values of all the articles being set down therein, amounting to seven hundred and fifty-eight dollars. This invoice was written by an agent of the plaintiff, his son, who was assisted in ascertaining the articles and appraising them by one person whom said agent chose for that purpose, and by another chosen for such purpose by said Joseph, who also was present. Said Joseph then owed the plaintiff the mortgage debt, and was also indebted to him in some amount for rent, and the invoice appears to have been made in contemplation of a transfer of the invoiced property to the plaintiff upon said indebtedness. On the 1st of August, 1883, said agent, accompanied by the plaintiff, again went to said manufactory and stated to the defendant Joseph that they had come to get the furniture; but in the mean time said invoiced articles, or the greater portion thereof, had been sold and delivered by said Joseph to his co-defendant. Thereupon this action was commenced.

The court, at the request of the defendants, gave the jury certain instructions, numbered 2, 3 and 4, to which objections are made.

The instruction numbered 2 was as follows: " If the property in controversy belonged to the defendants, or either of them, and the plaintiff claims to have purchased the same

from them, he can not recover in this case, if the property in controversy was of a value exceeding fifty dollars, unless the possession of the property was delivered by the defendant to the plaintiff, or unless the contract of sale was in writing and signed by the defendant, or unless the property was paid for in whole or in part, or something in earnest delivered by him."

The instruction numbered 3 was to the same effect.

Section 7 of our statute of frauds (R. S. 1881, section 4910), is as follows: "No contract for the sale of any goods, for the price of fifty dollars or more, shall be valid, unless the purchaser shall receive part of such property, or shall give something in earnest to bind the bargain or in part payment, or unless some note or memorandum in writing of the bargain be made, and signed by the party to be charged thereby, or by some person thereunto by him lawfully authorized."

A comparison of this statute with the instruction quoted discloses in the latter much looseness and inaccuracy, yet it appears that the appellant was not harmed thereby.

The evidence was such that the jury could have found that no contract, either executed or executory, was completed; that there was but an unfinished negotiation. If there was a contract, it was one for the sale of goods for the price of more than fifty dollars; there was no note or memorandum in writing of the bargain signed by said Joseph or any person thereunto by him lawfully authorized, and the plaintiff gave nothing in earnest to bind the bargain. If there was a contract of sale, payment for the goods was to be made by giving said Joseph credit for the amount of the goods upon his indebtedness to the plaintiff; but it was shown, and that by the testimony of the plaintiff's said agent, that no such credit was given before the 1st of August, 1883. Therefore, nothing was given in part payment. But the appellant claims that there was evidence which proved, or tended to prove, and from which the jury could have found, that he, through his said agent, received part of the property from said Joseph; and thereupon

he objects to the words " unless the possession of the property was delivered by the defendant to the plaintiff."

The language of the statute is, " unless the purchaser shall receive part of such property." To constitute a receipt of property, as contemplated by the statute, it is true that there must be a delivery by the seller. What is required is an act of the purchaser, that he shall receive. This involves delivery, but it is not intended that the seller by his act of delivery shall be able to render the contract enforceable against the purchaser without his receiving the goods or some part thereof as his property under the contract. The seller must part with his control with the purpose of vesting the right of property in the buyer, who must receive with such intent on his part. The receipt by the purchaser of a part of the goods, which would involve the delivery of a part, would satisfy the statute. If the instruction had required a delivery of a part only of the goods, it would have been too favorable to the appellant, but by the use of the words objected to it required too much.

There was evidence that, in the course of the invoicing, the parties came to a lot of bed-posts, as to which, after invoicing them, the appellant's said agent held a conversation with said person who was assisting on behalf of said Joseph in the invoicing. There were in the same room some unfinished safes owned by said person assisting, who was also a furniture dealer. Said agent having objected to the price of the bed-posts, said person assisting contended that they were worth a certain amount, whereupon said agent asked said other person if he would take them for that, and he said that he guessed he would; and said agent asked said owner of the safes if he would trade them for the bed-posts, and the latter answered that he would. Said Joseph was present and did not object. This was before the invoicing was ended. The safes do not appear to have been mentioned in the invoice, which included the bed-posts, which were described also in the complaint and in the accompanying affidavit.

Dehority *v.* Paxson *et al.*

None of the goods invoiced were separated from other goods, nor were any articles removed from the places in which they were found by said persons. The goods were merely viewed by said persons, while their prices were estimated and said schedule was written.

To maintain his action the plaintiff could rely only upon his own title, and could not support his claim to any part of the property by proof of ownership thereof in another.

If there was any contract, there plainly was no conditional sale and delivery of property. Proof of an otherwise executory agreement for a sale of goods could not support replevin; for the contract of sale which will support such an action must be one under which the party acquires the right of possession.

If the evidence showed an executed contract of sale, sometimes called a bargain and sale, none of the goods other than said bed-posts were received under it.

The evidence relied on to prove the receipt of this part of the goods shows a merely oral communication between the plaintiff's agent and said owner of the safes, before any contract of sale was completed between the plaintiff and said Joseph. It does not show any act of any person, but shows merely words; and at the time when they were spoken the plaintiff had not acquired any title to the property which he proposed to exchange. The statute is intended as a guard against fallible recollection of oral communications and the facility for the perpetration of fraud by means of false evidence concerning such language. The receipt of a part of the goods sold by an oral contract can not be proved by evidence of mere words used by the parties; there must be some act. Though oral language of the parties may be admitted as part of the *res gestœ,* to explain an act which they accompanied as being a receipt of the goods, evidence of such language can not of itself prove a receipt within the meaning of the statute.

Here there was no delivery of the bed-posts to any person. The alleged seller did not part with his possession or control; they were not actually received by the plaintiff as his property pursuant to a completed contract of sale, as a part of the goods transferred by such a contract; nor were they so received by any other person.

So far as there were any acts of the parties in relation to said bed-posts, they were of the same character as their acts in relation to all the other goods. See *Shindler* v. *Houston*, 1 N. Y. 261.

There having been no evidence from which a receipt of any part of the property by the plaintiff within the meaning of the statute could be found, he was not harmed by the failure of the court to indicate to the jury that his receipt of a part of the goods would take the contract, if there was one, out of the operation of the statute.

In the chattel mortgage introduced in evidence, executed by the defendant Joseph R. Paxson to the plaintiff April 27th, 1882, and recorded the next day, the mortgaged property was described as follows:

"All the furniture, lumber and materials in and pertaining to the furniture factory and planing mill known as the Hoosier Planing Mill and Furniture Manufactory of the city of Anderson, Indiana, consisting of bedsteads, tables, chairs, bureaus, dressing-cases, and all other furniture usually made in furniture factories; also walnut lumber, one planer, and all furniture hereafter made in said factory."

The fourth instruction to the jury was as follows:

"The plaintiff can not recover possession of the property in controversy by virtue of the chattel mortgage introduced in evidence, unless the evidence shows it to be the same property described in the mortgage."

This seems to be a correct proposition, and it is not criticised except because of its supposed effect in connection with the action of the court in excluding certain evidence. The instruction, being a correct general statement of the law, was

not in itself erroneous, and if the appellant desired a particular and definite instruction pointing out which goods should be regarded as the same property as that described in the mortgage, he might have so requested the court. We think that if there was error it was in the exclusion of evidence, and not in the instruction.

The plaintiff examined as a witness the defendant Joseph R. Paxson, the mortgagor. In the course of the examination, this witness testified that none of the furniture mentioned in the mortgage was contained in the invoice. The plaintiff then offered to prove by said witness that the furniture described in the invoice and in the complaint was manufactured in said factory, and out of lumber and materials mentioned and described in said mortgage. The court, upon the objection of the defendants, excluded this offered evidence.

The question here presented for decision is not one involving the consideration of the subject of mortgaging after-acquired chattels, or a determination whether or not a mortgage of merely all furniture thereafter made in said factory would hold such furniture as against the mortgagor or his vendee for value with constructive notice.

As to the furniture indicated in the offered evidence, the mortgage was a legal, and not a merely equitable mortgage. It was a mortgage of existing specific lumber and materials with a sufficient manifestation in the mortgage of the intention of the parties thereto that it should hold the manufactured articles, the character of which was indicated, which should be made from said lumber and materials at the particular place at which they were shown by the mortgage to be located. Furniture manufactured in said factory from the lumber and materials mentioned and described in the mortgage was included in the mortgage, and such furniture was sufficiently described by the terms of the mortgage to be capable of identification by parol evidence.

As against the defendants, the plaintiff could recover, by virtue of the mortgage, the furniture described in the com-

plaint, which was shown to have been removed recently from said factory, by proving that it was made there of the lumber and materials mentioned and described in the mortgage. Therefore, the court erred in excluding said evidence, and the judgment should be reversed.

PER CURIAM.—Upon the foregoing opinion, the judgment is reversed, at the costs of the appellees, and the cause is remanded for a new trial.

Filed Sept. 27, 1884.